## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Sasha Rizzo, on behalf of herself and all others similarly situated, | Case No.: 17-cv-408-jdp |
| Plaintiff, | |
| v. | **PLAINTIFF'S BRIEF IN SUPPORT OF HER MOTION FOR CLASS CERTIFICATION** |
| Kohn Law Firm S.C., | |
| Defendant. | |

## INTRODUCTION

Defendant Kohn Law Firm S.C. (hereinafter "Defendant") routinely publicly filed consumers' FICO credit scores, for no purpose whatsoever, in the course of suing them for delinquencies on consumer credit card balances. Such conduct is in violation of the very letter and spirit of 15 U.S.C. § 1681 *et seq.*—the Fair Credit Reporting Act (hereinafter "FCRA") and 15 U.S.C. § 1692 *et seq.*—the Fair Debt Collection Practices Act (hereinafter "FDCPA"). Plaintiff Sasha Rizzo (hereinafter "Plaintiff") now moves for certification of two classes of similarly situated consumers—the first putative Class consisting of consumers who have had their rights violated within two years of the filing of this lawsuit, within the statute of limitations for a cause of action brought under the FCRA, and the second putative Class consisting of consumers who have had their rights violated within one year of the filing of this lawsuit, within the statute of limitations for a cause of action brought under the FDCPA. Because this case arises from Defendant's uniform actions over an extended period of time affecting a large number of consumers, and because Plaintiff

has satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Court should grant Plaintiff's motion.

## PROCEDURAL BACKGROUND

Plaintiff filed her Class Action Complaint on May 26, 2017, against Discover Bank and Defendant for violations of the FCRA and FDCPA (*ECF No. 1*). Plaintiff filed her Amended Class Action Complaint on May 30, 2017, asserting the same claims against the same parties (*ECF No. 2*).

On July 27, 2017, Plaintiff and Discover Bank stipulated to the dismissal of all claims against Discover Bank without prejudice (*ECF No. 19*). The Court granted the stipulation later that day (*ECF No. 20*).

On August 7, 2017, Defendant filed its Answer to Plaintiff's Amended Complaint (*ECF No. 25*) and also a Motion to Stay Proceedings and Compel Arbitration (*ECF No. 21*). On February 12, 2018, the Court denied Defendant's Motion to Stay Proceedings and Compel Arbitration (*ECF No. 41*).

Plaintiff now timely files her Motion for Class Certification.

## FACTUAL BACKGROUND

Prior to this action, Plaintiff obtained a credit card issued by Discover Bank with an account number ending in "4195."  Am. Compl. ¶¶ 17-18; Thereafter, Plaintiff utilized the credit card to make various purchases for home and personal use only and, in so doing, incurred a debt to Discover Bank. *Id.* ¶¶ 18-19. When Plaintiff failed to repay that debt, Discover Bank retained Defendant to engage in collection efforts. Am. Compl. ¶¶ 19-20.

On or about May 8, 2017, Defendant publically filed a complaint against Plaintiff in the Circuit Court of Eau Claire County, court file number 2017-SC-000777, seeking to obtain a judgment in the amount of $4,850.78—representing the debt, plus costs, disbursements, and interest. Am. Compl. ¶¶ 20-21; Am. Compl. Exhibit 1, Summons and Complaint for *Discover Bank C/O Discover Products Inc. v. Sasha M. Murphy*, and Attachment of Account Summary and Billing Statement (*ECF No. 2-1*) (hereinafter "Am. Compl. Ex. 1"); Declaration of Sasha Rizzo ("Rizzo Decl.") ¶ 3. Defendant included as an attachment to the complaint an account summary and billing statement that had been sent by Discover Bank to Plaintiff on or about February 27, 2017. Am. Compl. ¶ 22; Am. Compl. Ex. 1; Rizzo Decl. ¶ 3. Included on the account summary and billing statement was Plaintiff's FICO credit score. Am. Compl. ¶ 23; Am. Compl. Ex. 1; Rizzo Decl. ¶ 3. In so doing, Defendant published Plaintiff's FICO credit score. *Id.* Defendant's publication of Plaintiff's FICO credit score is violative of the FCRA and the FDCPA.

Over the course of the past two years, Defendant has filed similar complaints against a large number of consumers and has included similar attachments to such complaints, and has, thus, published many consumer's FICO credit scores in violation of the FCRA and the FDCPA. In fact, Defendant admits that it has done so on 859 separate occasions. *See* Declaration of Thomas J. Lyons, Jr. ("Lyons Jr. Decl.") ¶ 8, Exhibit 2, Defendant's Answers to Plaintiff's First Set of Interrogatories, Numbers 14-15.

Plaintiff now submits this brief in support of her Motion for Class Certification of two classes. Plaintiff proposes the first Class, the "FCRA Class", be defined as: All current and former customers of Discover Bank in the state of Wisconsin who have had their FICO

credit scores published by Defendant in circuit court collection actions within two years of the date of the filing of this lawsuit—May 27, 2017. Excluded from the putative FCRA Class, eligibility according to the above criterion notwithstanding, are: All counsel for Plaintiff and the Class; Counsel for Defendants; and the assigned judge, magistrate judge, and their clerks and staff.

Plaintiff proposes the second Class, the "FDCPA Class", be defined as: All current and former customers of Discover Bank in the state of Wisconsin who have had their FICO credit score published by Defendant in circuit court collection actions within one year of the date of the filing of this lawsuit—May 26, 2017. Excluded from the putative FDCPA Class, eligibility according to the above criterion notwithstanding, are: All counsel for Plaintiff and the Class; counsel for Defendant; and the assigned judge, magistrate judge, and their clerks and staff.

## REQUIREMENTS FOR CLASS CERTIFICATION

Class actions are essential to enforce laws protecting consumers. As the court stated in *Cruz v. All Saints Healthcare Sys., Inc.,* 625 N.W.2d 344, 349 (Wis. Ct. App. 2001):

> To entertain the individual claim of each requester… would be impossible. Even though they might be small claims matters… the sheer number of cases would overwhelm the system. The effect of numerous identical claims which could otherwise be handled in a class action would be to either deny or unreasonably delay justice for a host of other litigants. It is concluded that it would be impracticable to bring all of the interested parties before the court and, in any event, it is concluded that if it were not for a class action suit numerous interested parties would be denied their day in court because an individual claim, though meritorious, would not warrant the time of a lawyer.

A plaintiff seeking to certify a class must satisfy all four requirements set forth in Rule 23(a) of the Federal Rules of Civil Procedure: (1) the class be so numerous that joinder

of all of its members would be impracticable; (2) the class members' claims give rise to common questions of law or fact; (3) the plaintiff's claims must be typical of the class members' claims; and (4) the plaintiff and her counsel must be adequate representatives of the class. *See Amchen Prods., Inc v. Windsor,* 521 U.S. 591, 613 (1997).

In addition, a plaintiff must satisfy one of the three requirements set forth in Rule 23(b) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 23(b). To satisfy Rule 23(b)(3), a plaintiff must show that "common questions of law and fact predominate over individual questions and that the class action form is superior to other methods for adjudicating the controversy." Relevant factors include the class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A-D). The Seventh Circuit has stated that Rule 23 of the Federal Rules of Civil Procedure should be liberally interpreted. *King v. Kansas City, S. Indus., Inc.,* 518 F.2d 20, 25-26 (7th Cir. 1975).

Inquiry into the merits of the claims is not appropriate when considering a motion for class certification. *See, e.g., Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78 (1974) (view of the merits not grounds for denial of class certification); *West v. Prudential Secs., Inc.,* 282 F.3d 935, 938 (7th Cir. 2002) (same); *Bieneman v. City of Chicago,* 838 F.2d 962, 964 (7th Cir. 1988) ("the propriety of class certification does not depend on the outcome of the suit").

## ARGUMENT

### I.   THE PLAINTIFF SATISFIES ALL THE REQUIREMENTS FOR CLASS CERTIFICATION.

#### A.  Numerosity.

A class may be certified if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs need not show that joinder is impossible, but, rather, that joining all members of the class would be difficult. *See, e.g., Olson v. Brown,* 284 F.R.D. 398, 407 (N.D. Ind. 2012). Further, a court does not need to determine that there appears to be a sufficient quantity of winning claims; a court need only find it reasonably likely that the class of potential claimants is so large that joinder would be impracticable. *See Parko v. Shell Oil Co.,* 739 F.3d 1083, 1084-85 (7th Cir. 2014) ("The defendants are thus asking us to put the cart before the horse. How many (if any) of the class members have a valid claim is the issue to be determined *after* the class is certified.") (emphasis in original).

Defendant admits that, within the past two years of filing this lawsuit, it published the FICO credit scores of 859 current and former customers of Discover Bank in the state of Wisconsin in the course of filing circuit court collection actions. *See* Lyons Jr. Decl. ¶ 7, Ex. 2 ¶¶ 14-15. Accordingly, it is undisputed that the putative FCRA Class is comprised of 859 individuals. *Id.* Moreover, the individual putative FCRA Class members may be readily identified by reviewing Defendant's records as each putative FCRA Class member

was the defendant in a state court collection action brought by Defendant on behalf of Discover Bank.

It is unclear at this point in the litigation how many of the 859 individuals who comprise the putative FCRA Class also comprise the putative FDCPA Class. However, it is not necessary that the precise number of putative class members be known. "A class action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Litigation,* 95 F.R.D. 321, 324 (E.D.N.Y. 1982); *Lewis v. Gross,* 663 F.Supp. 1164, 1169 (E.D.N.Y. 1986). "Where the exact size of the class is unknown, but it is general knowledge or common sense that it is large, courts can take judicial notice of such and assume joinder is impracticable. *See* 2 *Newberg on Class Actions* (3d ed. 1992), § 7.22.A. Here, if Defendant published the FICO credit scores of 859 current and former customers of Discover Bank in the state of Wisconsin in the course of filing circuit court collection actions within two years of the filing of this lawsuit, it is reasonable to assume that approximately half of those, or 430, were published within one year of the filing of this lawsuit.

In general, for classes numbering at least 40, joinder is considered impracticable, and, thus, the numerosity requirement imposed by Rule 23(a)(1) is deemed satisfied. *See, e.g., Spuhler v. State Collection Servs., Inc.,* No, 16-CV-1149, 2017 WL 6557558 at *4 (E.D. Wis. Dec. 22, 2017); *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n.,* 375 F.2d 648, 653 (4th Cir. 1967) (joinder of 18 class members considered impracticable); *Swanson v. American Consumer Indus.,* 415 F.2d 1326, 1333 (7th Cir. 1969) (joinder of 40 putative class members considered impracticable); *Philadelphia*

*Electric Co. v. Anaconda American Brass Co.,* 43 F.R.D. 452, 463 (E.D. Pa. 1968) (joinder of 25 putative class members considered impracticable); *Sala v. Nat'l. R. Pass. Corp.,* 120 F.R.D. 494, 497 (E.D. Pa. 1988) (joinder of 40-50 putative class members considered impracticable); *Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181, 184 (N.D. Ill. 1992) (joinder of approximately 70 putative class members considered impracticable). The joinder of 849 FCRA Class members and approximately 430 FDCPA Class members would be impracticable and, thus, the Court should find that Plaintiff has satisfied the numerosity requirement for class certification.

### B. Commonality.

A putative class may be certified if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts have found commonality if there exists one issue common to all putative class members. *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2556 (2011) ("'[e]ven a single [common] question' will do") (quoting 103 Colum. L. Rev. 149, 176 n. 110 (2003)); *Soutter v. Equifax Info. Servs., LLC,* 307 F.R.D. 183, 207-08 (E.D. Va. 2015) ("*Any* of these contentions are sufficient to demonstrate class commonality under Rule 23(a)(2)") (emphasis added). "[T]he common contention must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Bauer v. Kraft Foods Global, Inc.,* 277 F.R.D. 558, 562 (W.D. Wis. 2012) (quoting *Dukes*).

In this case, it is undisputed that within the past two years Defendant published the FICO credit scores of 859 current and former customers of Discover Bank in the state of

Wisconsin in the course of filing circuit court collection actions. *See* Lyons Decl., Ex. 2 ¶¶ 14-15. The dispositive issues are—indeed, the only issues—are whether such conduct violates the FCRA and the FDCPA. Accordingly, the Court should find that Plaintiff has satisfied the commonality requirement for class certification.

### C. Typicality.

A class may be certified if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The words "claims or defenses" refers to the types of claims or defenses that can be raised in a court of law as part of an actual or impending lawsuit. *Amchem Prods., Inc. v. Windson,* 521 U.S. 591, 623 n. 18 (1997). "[T]he focus is whether the representative plaintiffs' claims are based on the same legal theory and arise from the same conduct that gives rise to the claims of the other members of the proposed class." *Bauer,* 277 F.R.D. at 562.

Here, Plaintiff seeks the same relief for herself as she seeks for the putative Classes: statutory damages, declaratory and/or injunctive relief, and court costs and attorneys' fees for Defendant's violations of the FCRA and FDCPA. Plaintiff has suffered no unique effects or circumstances and is not aware of any facts that set other putative Class members apart. Plaintiff's concern is potential future harm and holding Defendant accountable under the statutes. Plaintiff's interests are typical of those in the putative Classes, and the Court should find that the typicality requirement is satisfied.

### D. Adequacy/Appointment of Counsel.

A class may be certified if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This "requirement is met when

the class representative is part of the class and possess[es] the same interest and suffer[s] the same injury as the [absent] class members." *Amchem Prods., Inc.,* 521 U.S. at 625-26. The primary purpose of the adequacy requirement is to ensure that there are no conflicts of interest between the named parties and the class they seek to represent. *See id.* A putative class representative must also have a "sufficient interest in the outcome." *See Bauer,* 277 F.R.D. at 562.

Courts also commonly assess the adequacy of putative class counsel under this requirement. *See Bauer,* 277 F.R.D. at 562. Rule 23(g)(1) of the Federal Rules of Civil Procedure requires a court certifying a class to appoint adequate class counsel. Courts are required to consider "the work counsel has done in identifying or investigating potential claims in the action"; "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; "counsel's knowledge of the applicable law"; and "the resources that counsel will commit to representing the class." *See id.* at 564; *see also* Fed. R. Civ. P. 23(g)(1)(A).

Here, Plaintiff and her counsel are committed, adequate representatives of the putative Classes, deserving of appointment under Rule 23. *See* Rizzo Decl. ¶¶ 9-11. Plaintiff initiated this litigation more than a year ago (*see ECF No. 1*), has maintained an active role in the litigation, and she remains committed to pursuing relief for the putative Classes. *Id.* Likewise, Plaintiff's attorneys initially viewed only the state court complaint filed against Plaintiff but, unprompted, identified Defendant's violations of Plaintiff's rights and concluded that other consumers were likely to have similarly suffered. *See* Declaration of Josh Christianson ¶ 4, Exhibit 1.  Plaintiff's attorneys have advanced this

litigation by developing the record on Defendant's practices and are committed to continuing the litigation on behalf of the putative Classes through trial. Plaintiff's attorneys have an extensive record of successfully resolving class actions for individuals affected by disregard for consumer protection and privacy legislation. *See* Lyons Jr. Decl. ¶ 4, Exhibit 1; Declaration of Thomas J. Lyons, Sr. ¶ 3, Exhibit 1.  Most recently, Plaintiff's counsel has been certified as class counsel in the following federal consumer protection cases in Wisconsin Federal Courts: *Spuhler v. State Collection Servs., Inc.,* No. 16-CV-1149, 2017 WL 4862069 (E.D. Wis. Oct. 26, 2017) and *Eggen v. Westconsin Credit Union,* No. 14-cv-873-bbc, 2016 WL 797614 (W.D. Wis. Feb. 26, 2016). The Court should find that Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the putative Classes and appoint the same as representatives of the certified Classes.

### E. Predominance.

The predominance requirement means that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The requirement is met when the questions of law and fact between the putative class members are "sufficiently cohesive." *See Amchem Prods., Inc.,* 521 U.S. at 623 & n. 18. The requirement is "qualitative rather than quantitative" and "goes to the efficiency of a class action as an alternative to individual suits." *Parko,* 739 F.3d at 1085. The inquiry focuses primarily on common issues on liability. A. CONTE & H. NEWBERG, *CLASS ACTIONS* § 4.26 at 4-90-91 & n. 264 (4th ed. 2002) (citing cases). The potential for individual variation in damages is not determinative. *Arreola v. Godinez,* 546 F.3d 788, 800-01 (7th Cir. 2008) ("Although the extent of each class member's

personal damages might vary, district judges can devise solutions to address that problem if there are substantial common issues that outweigh the single variable of damages amounts.").

In *Murray v. GMAC,* the Seventh Circuit took the opportunity to address "some fundamental questions about the management of consumer class actions." 434 F.3d 948, 951 (7th Cir. 2006) (alleging class claims for use of private credit information for purposes not permitted by the FCRA). Judge Easterbrook observed that class actions brought under consumer protection statutes are fit for class treatment because they rely on the same law, often just one or two counts, to prosecute the claims of many individuals. *See id.* at 953. Further, such claims are of a character that individual damages are likely to be small and the primary motivation to bring a claim is—and was intended by Congress to be—the imposition of statutory damages directed at uniform conduct common to all potential claimants. *Id.*

Under the reasoning of *Murray v. GMAC,* this case should be viewed as a predominately common adjudicative exercise. This lawsuit concerns Defendant's common practice of publishing consumer's FICO credit scores and the legality of such under the FCRA and the FDCPA. Though there may be some need to review court files and/or the information Defendant has already identified in order to verify class membership or entitlement to relief, the systemic, objective review of identifiable sets of records does not create individualized issues that predominate over common ones. *See Smilow v. Southwestern Bell Mobile Sys., Inc.,* 323 F.3d 32, 40 (1st Cir. 2003) ("Common issues predominate where individual factual determinations can be accomplished using computer

12

records, clerical assistance, and objective criteria."); *Souter v. Equifax Info. Servs., LLC,* 307 F.R.D. 183, 214-15 (E.D. Va. 2015) (finding predominance requirement satisfied and certifying class where class eligibility could be determined objectively by review of identifiable set of records, including court records). The Court should find that Plaintiff has satisfied the predominance requirement for certification of the putative Classes.

### F. Superiority.

A class may be certified if class treatment is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Pertinent factors for determining whether class treatment is superior to other methods for resolving this controversy include (1) class members' interest in proceeding individually, (2) the extent and nature of any litigation already begun by class members, (3) the desirability of concentrating the litigation Western District of Wisconsin, and (4) the likely difficulties in managing the action as a class action. Fed. R. Civ. P. 23(b)(3)(A-D); *see also Bauer v. Kraft Foods Global, Inc.,* 277 F.R.D. 558, 564 (W.D. Wis. 2012).

Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. *Eovaldi v. First Nat'l Bank,* 57 F.R.D. 545 (N.D. Ill. 1972). The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. *Hurwitz v. R.B. Jones Corp.,* 76 F.R.D. 149 (W.D. Mo. 1977). It is proper for a court, in deciding the "best" available method of adjudication, to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class

members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.* 503 F.2d 1161, 1165 (7th Cir. 1974).

In this case, there is no better method available for the adjudication of the claims which might be brought by each individual consumer. The vast majority of consumers are undoubtedly unaware that their rights have been violated. Court records reveal that no similar claims have been filed by other consumers. *See* Lyons Jr. Decl. ¶ 7. Additionally, consumers from whom Defendant is attempting to collect allegedly delinquent debts are, by definition, unlikely to be able to pay to retain counsel to protect their rights on an individual basis.

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller and Kane have discussed, in analyzing consumer protection class actions such as the instant one, "typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant ligation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated." 7B Wright et al., § 1778, at 59; *see also Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985) ("Class actions… may permit the plaintiff to pool claims which would be uneconomical to litigate individually.") The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.

*Lake v. First Nationwide Bank,* 156 F.R.D. 615, 628-629 (E.D. Pa. 1994); *see also Amchem Prod. Inc.,* 521 U.S. at 617; *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997). The Court should find that the superiority requirement has been satisfied.

## CONCLUSION

Based on the forgoing, and because Plaintiff has satisfied all requirements for class certification under Rule 23, the Court should grant Plaintiff's Motion for Class Certification, in its entirety.

Dated this 1st day of June, 2018.

Respectfully submitted,

By: s/Thomas J. Lyons Jr.

Thomas J. Lyons, Jr., Esq.
MN Attorney I.D. #: 0249646
CONSUMER JUSTICE CENTER, P.A.
367 Commerce Court
Vadnais Heights, MN 55127
Telephone:  (651) 770-9707
Facsimile:   (651) 704-0907
Email: tommy@consumerjusticecenter.com

Thomas J. Lyons, Esq.
WI Attorney I.D. #:  1019127
LYONS LAW FIRM P.A.
367 Commerce Court
Vadnais Heights, MN 55127
Telephone:  (651) 770-9707
Facsimile:   (651) 770-5830
Email: tlyons@lyonslawfirm.com

Joshua D. Christianson, Esq.
WI Attorney I.D. #:  1060033
CHRISTIANSON & FREUND, LLC
920 So. Farwell St., Ste. 1800
P.O. Box 222
Eau Claire, WI 54702-0222
Telephone: (715) 832-1800
Facsimile:  (888) 979-8101
Email: lawfirm@cf.legal

***ATTORNEYS FOR PLAINTIFF RIZZO***