UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

SASHA RIZZO, on behalf of herself
and all others similarly situated,

     Plaintiff,

                                                     Case No.: 17-CV-408

v.

DISCOVER BANK and KOHN LAW FIRM S.C.,

     Defendants.

## DEFENDANT KOHN LAW FIRM S.C.'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

The facts of this case are simple. Plaintiff Sasha Rizzo incurred a debt with Discover Bank ("Discover"), she was unable to pay the debt, and Kohn Law Firm S.C. ("Kohn") filed a state court action on behalf of Discover to recover the debt, attaching to the complaint a monthly billing statement that contained plaintiff's credit score. At her deposition, plaintiff testified that, other than her belief that the filing that contained her credit score violated her right to privacy, she could not identify any facts or evidence demonstrating that she had sustained any actual or concrete harm.

Kohn requests the Court grant its motion for summary judgment on the following grounds:

- To have standing, the Supreme Court requires a plaintiff to have suffered a concrete injury. Spokeo, Inc. v. Robins, 136 S.Ct. 1540 (2016). Plaintiff cannot offer any facts or evidence demonstrating that she has suffered an actual, concrete injury sufficient to confer standing to bring this action in her personal capacity or as a class representative. In fact, the putative class does not even seek to recover any actual damages.

- Plaintiff cannot demonstrate that Kohn violated the Fair Credit Reporting

Act ("FCRA") because the Act does not prohibit Kohn's use of a properly obtained credit score and Kohn had a "permissible purpose" to both obtain and utilize the information in connection with the extension, review, or collection of an account.

- Plaintiff cannot demonstrate that Kohn violated the Fair Debt Collection Practices Act ("FDCPA") because she can point to no facts or evidence demonstrating that Kohn harassed or abused her, used false representations or deceptive means to attempt to collect a debt or obtain information concerning a consumer, or used unfair or unconscionable means to attempt to collect a debt.

- Plaintiff's claims are barred by Wisconsin's privilege doctrine.

Accordingly, for the reasons set forth herein, Kohn respectfully requests the Court grant its motion for summary judgment and dismiss this action.

## BACKGROUND

This putative class action alleges that Kohn violated the FCRA and FDCPA.  (Doc. 2, ¶¶60-66)  Specifically, plaintiff contends that Kohn violated provisions of the FCRA and FDCPA by filing collection actions in Wisconsin state courts that attached as an exhibit to those pleadings a statement of an amount due which also set forth the plaintiff's credit score.  (See Id., ¶¶2, 22-23)

In plaintiff's amended complaint, plaintiff concedes that she sought credit from Discover, that she was issued a Discover credit card, and that she was unable to repay the balance on her credit card account.  (SPF, ¶1)  Plaintiff alleges that Kohn filed a state court action in Eau Claire County on behalf of Discover to recover the debt which attached a monthly billing statement as an exhibit that contained plaintiff's credit score.  (SPF, ¶2)  Kohn filed the action on May 8, 2017 in Eau Claire County Circuit Court via the Wisconsin State Court electronic filing system in an action styled Discover Bank v. Murphy, Eau Claire County, Case No. 17SC774.  (SPF, ¶3)  The inclusion of the credit score in the state court filings is the only allegedly improper conduct

by Kohn.  (SPF, ¶4)

The allegedly improper filing was redacted on December 9, 2017.  (SPF, ¶5)  At the time of her deposition, plaintiff was apparently unaware of the redaction.  (SPF, ¶6)

Plaintiff claims that Kohn violated the FCRA, specifically 15 U.S.C. §1681b(f), by filing documents attached to the complaint bearing plaintiff's credit score and that Kohn did not have a "permissible purpose" for "using" the credit score by including them in the state court filings. (Doc. 2, ¶¶25-26)  Plaintiff also claims that Kohn violated the FDCPA, specifically 15 U.S.C. §§1692d, 1692(e)(10) and 1692(f), by including her credit score in the state court filings.  (Id., ¶28)

Plaintiff was deposed on May 23, 2018.  (SPF, ¶7)  At that time, she was given the opportunity to identify the actual, concrete harms she sustained as a result of Kohn's allegedly improper conduct in attaching a document to the state court complaint that showed plaintiff's credit score.  (SPF, ¶8)  Other than saying that the disclosure of her credit score "invaded her privacy,"[1] plaintiff was unable to provide any testimony or point to any facts or evidence demonstrating that she sustained any actual or concrete injury or harm that was caused by the disclosure of her credit score.  (SPF, ¶9)  Plaintiff could not identify any way in which she had been damaged.  (SPF, ¶10)  Specifically, she testified as follows:

- she did not complain to anyone about the disclosures (SPF, ¶11);

- she did not communicate or ask or cause anyone to communicate her

---

[1]   In fact, it was not clear from plaintiff's deposition testimony whether she felt her privacy was invaded by the fact that Discover included her credit score on monthly billing statements or whether she had that reaction to Kohn filing a state court complaint that included as an exhibit a monthly billing statement that included her credit score.  (SPF, ¶23)  While the amended complaint alleges that Kohn violated the FCRA and FDCPA when filing a complaint that included a monthly billing statement bearing plaintiff's credit score, her complaints -- and whether she sustained any actual, concrete harm -- need to evaluated in light of her deposition testimony, which indicates that her credit score could have appeared on any document and plaintiff would believe that that inclusion violated her privacy.  In other words, plaintiff's deposition testimony highlighted that her complaints are primarily with Discover for including her credit score on monthly billing statements, as opposed to Kohn, who merely filed one of those statements as an exhibit to and in support of a state court collection complaint.

3

belief that the disclosure violated her privacy (SPF, ¶12);

- she does not know if the credit score was shown to anyone other than her (SPF, ¶13);

- she did not discuss the disclosure with anyone including her boyfriend, family members and her ex-husband (SPF, ¶14);

- she could not identify anyone who has ever seen the credit score and she has not attempted to determine if anyone has (SPF, ¶15);

- other than filing this action, she did not do anything upon realizing the credit score was included in the state court filings or Discover's monthly billing statements (SPF, ¶16);

- she has not spoken to anybody about the disclosure of her credit score and her belief that it invaded her privacy (SPF, ¶17); and

- she has not sought counseling, treatment or therapy regarding the disclosure of her credit score and her belief that it invaded her privacy, nor has she given any thought to doing so (SPF, ¶18).

The only testimony that plaintiff could provide as to any actual or concrete harm sustained as a result of Kohn's allegedly improper conduct is that she believed that the disclosure violated the FCRA and "invaded her privacy." (SPF, ¶19) She could not identify any actual or concrete harm sustained as a result of the allegedly improper conduct. (SPF, ¶20)

In addition, plaintiff's testimony demonstrated that her alleged belief that her privacy rights were invaded was not reasonably based. She testified that during the three years in which she was getting the credit card bills from Discover which contained her credit score, she was living at all times with her current boyfriend, her then boyfriend and/or husband and now former husband, and for a part of the time with a female friend of hers. (SPF, ¶21) Each of them occasionally opened her mail, which included the monthly billing statements from Discover. (SPF, ¶22) As a result, plaintiff did not have a reasonable expectation of privacy since she was letting other people read her mail, which included the monthly billing statements from Discover

that included her credit score.  (Id.)

With that backdrop, the amended complaint seeks to assert plaintiff's claims on behalf of

two classes:

- one referred to as the "FCRA Class" for all consumers who had their "consumer reports / credit scores" published in judicial court actions within two years of the filing of plaintiff's complaint, and

- the other referred to as the "FDCPA Class" for such consumers who had such information published within one year of the filing of the complaint.

(Doc. 2, ¶¶33, 35)

## STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact

and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant

"bears the initial responsibility of informing the district court of the basis for its motion" by

identifying "those portions of [the record]…which it believes demonstrates the absence of a

genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

When the nonmovant is the party with the ultimate burden of proof at trial, that party

retains its burden of producing evidence which would support a reasonable jury verdict.  Celotex

Corp., 477 U.S. at 324.  To survive summary judgment, a party cannot rely on her pleadings and

"must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986).  "In short, 'summary judgment is appropriate if, on the

record as a whole, a rational trier of fact could not find for the non-moving party.'"  Durkin v.

Equifax Check Servs., Inc., 406 F.3d 410, 414 (7th Cir. 2005) (citing Turner v. J.V.D.B. &

Assoc., Inc., 330 F.3d 991, 994 (7th Cir. 2003)).  In addition, although a plaintiff may have

"adequately alleged an injury for purposes of standing," they must "submit[] adequate evidence

of injury…to survive a motion for summary judgment."  Diedrich v. Ocwen Loan Servicing,

LLC, 839 F.3d 583, 591 (7th Cir. 2016).

When considering a motion challenging standing, this Court may look beyond the allegations and consider external facts calling standing into question, and view whatever evidence has been submitted on the issue.  See, *i.e.*, Apex Digital, Inc. v. Sears, Roebuck & Co., 572 F. 3d 440, 444 (7th Cir. 2009).

## ARGUMENT

The Court should dismiss the claims asserted against Kohn for at least four reasons.

First, a claimant has the burden of establishing Article III standing to pursue a claim. Specifically, to have standing, the Supreme Court requires a plaintiff to have suffered a concrete injury.  Spokeo, 136 S.Ct. 1540 (2016).  Plaintiff cannot offer any facts or evidence demonstrating that she has suffered an actual, concrete injury sufficient to confer standing to bring this action in her personal capacity or as a class representative.  As a result, her claims and those of the class -- which do not even seek to recover actual damages -- should be dismissed.

Second, plaintiff cannot demonstrate that Kohn violated the FCRA because it does not prohibit Kohn's use of a properly obtained credit score and Kohn had a "permissible purpose" to both obtain and utilize the information in connection with the extension, review, or collection of an account.  As a result, on this additional ground, plaintiff's FCRA claims should be dismissed.

Third, plaintiff cannot demonstrate that Kohn violated the FDCPA because she can point to no facts or evidence demonstrating that Kohn harassed or abused her, used false representations or deceptive means to attempt to collect a debt or obtain information concerning a consumer, or used unfair or unconscionable means to attempt to collect a debt.  As a result, on this additional ground, plaintiff's FDCPA claims should be dismissed.

Fourth, plaintiff and the class seek to hold Kohn liable for filings made in the underlying

state court collection action.  Such claims are barred by Wisconsin's privilege doctrine.

## I.     THE COURT SHOULD DISMISS THE CLAIMS AGAINST KOHN BECAUSE PLAINTIFF AND THE PUTATIVE CLASS LACK STANDING TO PURSUE THEM.

Plaintiff and the putative class lack standing to pursue the FDCPA and FCRA claims against Kohn because, pursuant to established Supreme Court authority, neither has sustained any actual, concrete injury that is fairly traceable to the alleged violations by Kohn.

Standing to sue is a constitutional requirement based on Article III's "limitation of federal-court jurisdiction to actual cases or controversies."  Raines v. Byrd, 521 U.S. 811, 818 (1997) (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 37 (1976)).  To have standing to sue, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Spokeo, 136 S.Ct. at 1547 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000)).  To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  Spokeo, 136 S.Ct. at 1548 (quoting Lujan, 504 U.S. at 560).  As the party invoking federal jurisdiction, a plaintiff bears the burden of establishing the elements of Article III standing.  Lujan, 504 U.S. at 561.

In Spokeo, the Supreme Court clarified what standing requires: "[p]articularization is necessary to establish an injury in fact but it is not sufficient.  An injury in fact must also be 'concrete.'"  Spokeo, 136 S.Ct. at 1548.  The Court elaborated that "concrete" is not necessarily "tangible," but a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."  Id. at 1549.

Deprivation of a procedural right without some concrete interest that is affected by the deprivation is insufficient to create Article III standing. Id. The Court in Spokeo made clear that Congress cannot expand Article III merely by passing a law. Id. at 1546-48; Hagy v. Demers & Adams, 882 F.3d 616, 622 (6th Cir. 2018) ("We know of no circuit court decision since Spokeo that endorses an anything-hurts-so-long-as-Congress-says-it-hurts theory of Article III standing.")

The plaintiff in Spokeo asserted a FCRA claim based on the publication of an inaccurate consumer report on the internet. Spokeo, 136 S.Ct. at 1544, 1546. Although the plaintiff in Spokeo alleged a violation of the FCRA aimed at the heart of the statute's goal of ensuring "fair and accurate credit reporting," the violation alone did not establish standing. Id. at 1546-48 ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfied the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."). The Supreme Court held that a plaintiff still had the burden to prove that he or she suffered an injury in fact that was particularized, concrete, and "fairly traceable to the challenged conduct of the defendant." Id. at 1547-48.

On remand, the Ninth Circuit held that the plaintiff had standing due to the nature of the inaccurate information published on the defendant's website and the concrete harm identified by plaintiff other than the statutorily created right to privacy. Robins v. Spokeo, Inc., 867 F.3d 1108, 1114 (9th Cir., Aug. 15, 2017). The inaccurate information disseminated for the entire world to see on defendant's website was material -- not like an immaterial zip code -- so it "present[ed] a sincere risk of harm to the real-world interest that Congress chose to protect with the FCRA." Id. at 1116. The harm from dissemination of this type of inaccurate information

was akin to the type of injuries vindicated by common law invasion of privacy claims. Id. at 1115. Thus, standing existed because the plaintiff identified a real -- as opposed to purely legal -- harm. Id. at 1117.

The Supreme Court has held that "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." Lujan, 504 U.S. at 561. To satisfy the concreteness requirement, an injury "must be 'de facto'; that is, it must actually exist." Spokeo, 136 S.Ct. at 1549. As the Supreme Court made clear in Spokeo, Congress cannot abrogate the constitutional requirement of injury in fact. Id. at 1547-48 ("Injury in fact is a constitutional requirement, and it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."); Diedrich, 839 F.3d at 591 (holding that although a plaintiff may have "adequately alleged an injury for purposes of standing," they must "submit[] adequate evidence of injury…to survive a motion for summary judgment.")

Here, plaintiff's deposition testimony demonstrates that she is pursuing claims founded on a "bare procedural violation, divorced from any concrete harm." Spokeo, 136 S.Ct. at 1549 (2016). Other than saying that the disclosure of her credit score "invaded her privacy," plaintiff was unable to provide any testimony or point to any facts or evidence demonstrating that she sustained any actual or concrete injury or harm that was caused by the disclosure of her credit score. (SPF, ¶¶9-10) Specifically, plaintiff could not identify any way in which she had been damaged:

- she did not complain to anyone about the disclosures (SPF, ¶11);

- she did not communicate or ask or cause anyone to communicate her belief that the disclosure violated her privacy (SPF, ¶12);

- she does not know if the credit score was shown to anyone other than her

(SPF, ¶13);

- she did not discuss the disclosure with anyone including her boyfriend, family members and her ex-husband (SPF, ¶14);

- she could not identify anyone who has ever seen the credit score and she has not attempted to determine if anyone has (SPF, ¶15);

- other than filing this action, she did not do anything upon realizing the credit score was included in the state court filings or Discover's monthly billing statements (SPF, ¶16);

- she has not spoken to anybody about the disclosure of her credit score and her belief that it invaded her privacy (SPF, ¶17); and

- she has not sought counseling, treatment or therapy regarding the disclosure of her credit score and her belief that it invaded her privacy, nor has she given any thought to doing so (SPF, ¶18)

The only testimony that plaintiff could provide as to any actual or concrete harm sustained as a result of Kohn's allegedly improper conduct is that she believed that the disclosure violated the FCRA and "invaded her privacy." (SPF, ¶19) She could not identify any actual or concrete harm sustained as a result of the allegedly improper conduct. (SPF, ¶20) That is not sufficient to confer standing.

FDCPA and FCRA claims founded on an invasion-of-privacy theory should be dismissed where there is no evidence offered that a plaintiff suffered any actual, concrete harm due to a defendant's purported invasion of privacy. That is precisely the situation here. Decisions following Spokeo demonstrate that plaintiff lacks standing to sue Kohn.

In Hagy, the Sixth Circuit applied Spokeo to find that a plaintiff lacked standing despite defendant's undisputed violation of the FDCPA. Hagy, 882 F.3d at 621. The plaintiffs in Hagy received a letter from a debt collector that failed to contain the statutorily required language advising that the communication was sent by a debt collector, but the letter otherwise contained all true information. Id. at 619, 621. Even though Congress provided a right to receive this

information as well as a private cause of action if such information was not provided, the court held that plaintiff failed to articulate a sufficient injury to confer standing.  Id. at 622.

Similarly, in Braitberg v. Charter Communs., Inc., 836 F.3d 925 (8th Cir. 2016), the plaintiff complained that the defendant retained identifiable information in violation of his "federal protected privacy rights" under the Cable Communications Privacy Act, which required that the information be destroyed.  Braitberg, 836 F.3d at 926.  The Eight Circuit explained that plaintiff did not have standing simply because the defendant invaded a legal right created by Congress.  Id. at 930.  The court in Braitberg held that the claimed invasion of privacy was not sufficient to create a case or controversy because there was no allegation of a "material risk of harm" from the alleged violation.  Id.  Like the Ninth Circuit in Robins, the court in Braitberg looked at a common law claim for invasion of privacy and reasoned that the alleged violation "traditionally has not provided the basis for a lawsuit in American courts."  Id.

The court in Smith v. Ohio State University, 191 F.Supp.3d 750 (S.D. Ohio 2016) addressed a FCRA claim based on a violation of privacy rights in the employment application process.  In denying the claim, the court stated as follows:

> In determining whether Congress has elevated FCRA breaches to the status of legally cognizable injuries, the Supreme Court held that "[a] violation of one of the FCRA's procedural requirements may result in no harm."  In this case, plaintiffs allege they suffered harm when their "privacy was invaded and they were misled as to their rights under the FCRA."  However, plaintiffs admitted that they did not suffer a concrete consequential damage as a result of OSU's alleged breach of the FCRA.  Without a concrete and particularized injury-in-fact, there is no Article III standing in this Court.

Smith, 191 F.Supp.3d at 755 (citations omitted).  Just like in Smith, plaintiff could not identify any concrete consequential harm that she suffered as a result of Kohn's alleged violations.

Moreover, in Van Gorp v. Commerce Bank, No. 4-17-cv-189, 2017 WL 8792709 (S.D.

Iowa Nov. 13, 2017), a recent case with similar facts (and the same attorneys that represent plaintiff and the putative class here), the court found that the plaintiff lacked standing on a claim of invasion of privacy right violation, noting that the plaintiff failed to plead concrete harm:

> Lack of standing. The only harm Van Gorp alleges is a privacy violation…She [did not point to] any past or future loss of money, job opportunity, or reputation she experienced by reason of the Bank including in its [court filing] her FICO score. Van Gorp has not pleaded…concrete harm that establishes a case or controversy over which this court has jurisdiction.
> . . .
>
> Bank's use of credit score. Neither has Van Gorp shown… that the Bank violated the FCRA when it disclosed in its [filing] Van Gorp's FICO credit score. The Bank permissibly obtained the credit score as part of Van Gorp's application for credit. No provision of the FCRA prohibited the Bank from referring to the FICO score it had properly obtained and then mentioned in filing its claim.
> . . .
>
> Persuasive is <u>Geiling v. Wirt. Fin. Servs., Inc.</u>, 2014 U.S. Dist. LEXIS 183237 (E.D. Mich. 2014), where the court held that the FCRA does not impose liability on a person who properly obtains a consumer report and then uses it in a court proceeding.

<u>Van Gorp</u>, 2017 WL 8792709 at *1-2.

Like the bank in <u>Van Gorp</u>, Discover had a permissible purpose to obtain plaintiff's credit report from a consumer reporting agency when it extended her credit.  <u>See</u> 15 U.S.C. §1681b(a)(3)(A).  Also like the situation in <u>Van Gorp</u>, plaintiff cannot show that she sustained any injury or harm related to a claimed invasion of privacy; all she can offer is a bare conclusion that her privacy was invaded and claims her private information was published.  (SPF, ¶¶7-20)  Specifically, plaintiff can point to no evidence that anyone saw the information -- or cared -- and she cannot demonstrate that the alleged publication of information had any negative effect on her whatsoever.  (<u>Id</u>.)  She could not identify any actual or concrete harm sustained as a result of the allegedly improper conduct.  (<u>Id</u>.)  A plaintiff has no standing to pursue FDCPA or FCRA claims

where the alleged violations involve only a "bare procedural violation, divorced from any concrete harm." Spokeo, 136 S.Ct. at 1549 (2016); Groshek v. Time Warner Cable, Inc., 865 F.3d 886 (7th Cir. 2017) (dismissing FCRA claim on the basis that the claimant failed to allege facts demonstrating a real, concrete appreciable risk of harm).

Plaintiff was given the opportunity at her deposition to demonstrate that she sustained an actual, concrete harm as a result of Kohn's alleged violations of the FCRA and FDCPA. (SPF, ¶¶7-20)  She failed to do so -- the only testimony or other evidence she could provide is that she believed that her right to privacy was invaded by the allegedly improper disclosure of her credit score. (Id.)  She could offer no more. (Id.)

A statutory violation alone is not sufficient; instead, to determine standing, Supreme Court precedent requires the Court to determine whether the alleged violation caused a concrete injury. Spokeo, 136 S.Ct. at 1547-48; Diedrich, 839 F.3d at 591; Shoots v. iQor Holdings US Inc., No. 15-CV-563, 2016 WL 6090723, at *4 (D. Minn. Oct. 18, 2016) ("By contending that non-compliance with one provision of the FCRA automatically renders a defendant's subsequent actions an invasion of privacy, [plaintiff] would raise every technical violation of any statute to the realm of a major substantive harm. This is a leap too far, and is directly contradicted by Spokeo, which made clear that some subset of violations are too small to implicate -- on a standing level -- the interests protected by the larger statutory framework.").  "Article III standing requires a concrete injury even in the context of a statutory violation." Spokeo, 136 S. Ct. at 1549; see Diedrich, 839 F.3d at 591 ("The [plaintiffs] have adequately alleged an injury for purposes of standing. This opens the door of the courtroom to them, but no more. Alleging injury for purposes of standing is not the same as submitting adequate evidence of injury under the statute to survive a motion for summary judgment…It is the [plaintiffs'] burden to produce

evidence sufficient to demonstrate a violation of the statute.").

Plaintiff has failed to meet her burden.  Plaintiff's deposition testimony demonstrated that she has not sustained any actual or concrete harm as a result of Kohn's alleged violations of the FCRA and FDCPA.  (SPF, ¶¶7-20)  Consequently, plaintiff lacks standing and her claims should be dismissed.

Even assuming Kohn's disclosure was prohibited by the FCRA, Spokeo requires the Court to look at the context of the alleged violation.  Spokeo, 136 S.Ct. at 1547-48; Robins, 867 F.3d 1117.  The Court must examine the nature of the violation "to ensure that they raise a risk of harm."  Piper v. Meade & Associates, Inc., 282 F.Supp.3d 905, 910 (D. Mary. 2017) (citing Robins, 867 F.3d at 1115-16).  Although plaintiff complains that her privacy rights were invaded, she has neither pled a cause of action for invasion of privacy nor pled facts sufficient to create a plausible inference of liability under such a cause of action.  Indeed, Wisconsin recognizes a number of categories of invasion of privacy, which can mean "[p]ublicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved…"  See Wis. Stat. §995.50(2)(c).  Plaintiff complains that certain information was disclosed.  However, she had no expectation of privacy that Discover would not obtain a credit report because the FCRA permitted disclosure of such information to Discover. 15 U.S.C. §1681b.  In addition, her deposition testimony established that she did not have a reasonable expectation of privacy.  (SPF, ¶¶21-22)

The context of the allegedly improper disclosure further establishes that plaintiff lacks standing here.  Plaintiff claims that her credit score was published for the world to see.  That is not accurate.  For someone to access the state court filing that contained the allegedly improper

content, several hurdles would have to be overcome and affirmative action would need to be taken, which plaintiff is not aware of ever occurring.  (SPF, ¶¶8-20)

The court in <u>French v. Am. Gen. Fin. Servs. (In re French)</u>, 401 B.R. 295 (Bankr. E.D. Tenn., Feb. 13, 2009) explained how court filings could not form the basis for an invasion of privacy claim:

> Taking the Complaint in a light most favorable to the Plaintiff, the court finds that she has not pled sufficient facts to withstand the Motion to Dismiss with respect to the invasion of privacy portion of Count Six.  The only factual allegations associated with this cause of action are the averment that the Defendant filed the Proof of Claim with attachments containing private, sensitive information and that the filing of this document made the Plaintiff's information available to the general public.  And while there is no dispute that the Defendant did file the Proof of Claim on October 31, 2008, and its attachments contained the Plaintiff's complete social security number and birth date, the Plaintiff has failed to allege facts sufficient to establish that the information was disseminated to "the public at large."
> …
>
> The simple fact that all documents filed in a bankruptcy case file are technically deemed "public records" does not satisfy the "publicity" element necessary to state a claim for invasion of privacy under Tennessee law.  Here, the Proof of Claim was filed only within the court's ECF system, and as evidenced by the Administrative Procedures, access to ECF is limited by the registration requirements to attorneys admitted to practice in the Bankruptcy Court for the Eastern District of Tennessee, non-attorney trustees, creditors, claims agents, court reporters, and transcribers by the registration requirements and to the public at large by fee requirements and having accessibility to travel to one of the divisional offices of the clerk located in Chattanooga, Greeneville, and Knoxville.  Moreover, the attachments to the Proof of Claim containing the Plaintiff's information were only accessible on the court's ECF system from October 31, 2008, until they were removed two weeks later on November 14, 2008, and in order to access it, a user would have been required to access the Plaintiff's Claims Register rather than the docket sheet for her case and then access the individual Proof of Claim itself.
>
> The <u>Southhall</u> court examined the exact issues raised by the Plaintiff, albeit under Alabama law which is likewise based on Restatement (Second) of Torts §652D and mirrors that of Tennessee, and came to the following conclusions:

The Debtor has failed to allege any facts that would support a finding that the matter was publicized. To the contrary, while the Claim was filed with this Court via the electronic filing system, such information is only available to parties who take affirmative actions to seek out the information. There are three ways to view information filed in any particular debtor's case. For access to the Court's electronic database, parties must be licensed to practice law and must register with the Court and obtain a login and password. As officers of the Court, that an attorney may have had access to this information does not pose a risk to the Debtor. Other creditors of the Debtor already had access to this information. The notice of the section 341 meeting of creditors that was mailed to all of the Debtor's creditors contained the Debtor's full social security number as required by Rule 2002(a)(1) of the Federal Rules of Bankruptcy Procedure. The 341 notice accessible in PACER is a redacted notice pursuant to Rule 9037 and contains only the Debtor's last four digits of her social security number. The final way to gain access to the bankruptcy file is to physically visit the Clerk's Office and use the computers provided to the public there. While it would appear that public access is freely granted to case files, if sought out, the likelihood that any member of the public viewed the Debtor's file is remote. The Clerk's Office sees little foot traffic, very few members of the public access the Court's electronic database in the Clerk's Office. Further, the Debtor has not asserted or alleged that anyone actually sought out and viewed the Debtor's personal information nor has she asserted that she suffered any damages as a result of the filing of the Claim. The Court therefore finds that the information was not in fact "publicized" and did not constitute an invasion of privacy. This count therefore is due to be dismissed.

Southhall, 2008 Bankr. LEXIS 3446, at *9-11, 2008 WL 5330001, at *3; see also Newton, 2009 Bankr. LEXIS 210, 2009 WL 277437 (adopting the rationale of the Southhall court's analysis). This court agrees with the analysis of the Southhall court, noting in this case, as in Southhall, that the Plaintiff has not made any allegations that her case file was ever viewed in the clerk's office or that her information was, in fact, ever seen by any member of the public at large. Likewise, one of the offending documents, which reflected the Plaintiff's social security number, was the official Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors & Deadlines issued by the court to all creditors on October 13, 2008. Because the Plaintiff has not alleged facts sufficient to establish a cause of action for invasion of privacy under Tennessee law, that portion of Count Six shall be dismissed.

Similar requirements for access to the federal electronic filing system are in place for access to

the Wisconsin State Court electronic filing system.  See Wis. Stat. §801.18(3); (SPF, ¶4)  Like the federal electronic system, for an individual not associated with the proceedings to access the state court filings in plaintiff's case, that individual would need to physically travel to the Eau Claire County courthouse and use one of the circuit court's computer terminals in order to look up any documents that were filed with Wisconsin's e-filing system.  (Id.)

Thus, not only has plaintiff failed to demonstrate that she has sustained any actual, concrete harm as a result of Kohn's allegedly improper conduct, but the nature and manner of the allegedly improper filings demonstrate that plaintiff's credit score was not published for the world to see.  To the contrary, affirmative action would need to be taken for anyone to gain access to that information, and plaintiff testified that she was unaware of anyone having done so. (SPF, ¶¶7-20)  In addition, the allegedly improper filings were redacted, effectively defeating any claim of any potential or possible harm in the future.  (SPF, ¶¶5-6)

Lastly, the disclosure at issue -- a credit score -- needs to be analyzed in terms of whether disclosure of that type of information could cause harm.  A credit score is a three-digit number reflecting creditworthiness based on "consumer behaviors and financial transactions."  Credit Scores, Lending, and Psychosocial Disability, 95 B.U.L. Rev. 1807, 1813 (Dec. 2015).  It includes no context or background as to the meaning of the number.  What harm can materialize from the disclosure of an accurate credit score?  It is not like a social security number or a credit card that someone could use to steal identity of commit fraud.  The disclosure of the credit score does not create the risk of harm for identity theft or fraud.  It is simply a number, and plaintiff has completely failed to identify how that disclosure has or could have caused her any harm, other than to say it was her belief that it invaded her privacy.

For the same reasons that plaintiff's claims fail for standing, so do those claims of the

putative class.  In fact, plaintiff's motion to certify the classes makes clear that plaintiff and the putative class are not seeking recovery for any actual harm sustained as a result of Kohn's allegedly improper conduct:

> Here, Plaintiff seeks the same relief for herself as she seeks for the putative Classes: statutory damages, declaratory and/or injunctive relief, and court costs and attorneys' fees for Defendant's violations of the FCRA and FDCPA.  Plaintiff has suffered no unique effects or circumstances and is not aware of any facts that set other putative Class members apart.  Plaintiff's concern is potential future harm and holding Defendant accountable under the statutes.  Plaintiff's interests are typical of those in the putative Classes, and the Court should find that the typicality requirement is satisfied.

(See Doc. 43, p. 9)  Thus, according to plaintiff's motion, neither the named plaintiff nor members of the putative class are alleging or seeking to demonstrate that they have sustained any actual harm as a result of Kohn's allegedly improper conduct.  Pursuant to Supreme Court precedent, neither the named plaintiff nor the putative class members can recover for any alleged violation without demonstrating that they have sustained any actual, concrete harm.  Spokeo, 136 S.Ct. at 1549.  A plaintiff has no standing to pursue a FCRA or FDCPA claim where the allegations contain only a "bare procedural violation, divorced from any concrete harm."  Id. That is the exact situation here.

Accordingly, the record demonstrates that plaintiff and the putative class lack standing to pursue the claims set forth in the amended complaint against Kohn.  The context of the alleged violation in this case could not have caused concrete harm to a reasonable person and plaintiff failed to establish how she suffered any concrete harm.  Plaintiff did not know of a single person who saw the credit score or a single opportunity harmed because of the filing of the credit score. She instead relies solely on the theory that her statutory privacy rights were invaded.  This theory must be rejected to comply with Spokeo.  The Supreme Court has said that a FCRA-created right

to privacy is not sufficient in the absence of concrete harm.  Spokeo, 136 S.Ct. at 1547-48.

Accordingly, plaintiff and the putative class lack standing.  The Court should grant this motion

for summary judgment, dismissing the claims and putative classes against Kohn on the merits

and with prejudice.

## II.       THE FCRA DOES NOT PROHIBIT KOHN FROM DISCLOSING PLAINTIFF'S CREDIT SCORE.

As noted above, plaintiff claims that Kohn violated 15 U.S.C. §1681b(f) by including

plaintiff's credit score in state court filings.  (Doc. 2, ¶¶25-26) That section states:

> (f) **Certain Use or Obtaining of Information Prohibited** A person shall
> not use or obtain a consumer report for any purpose unless—
>
> > (1) the consumer report is obtained for a purpose for which the
> > consumer report is authorized to be furnished under this section;
> > and
> >
> > (2) the purpose is certified in accordance with section 1681e of this
> > title by a prospective user of the report through a general or
> > specific certification.

15 U.S.C. §1681b(f).  Section 1681b(f) allowed Kohn to use the credit report as long as (1) it

was obtained with a permissible purpose and (2) that purpose was certified at the time the report

was obtained.  The amended complaint does not allege the first requirement was not satisfied,

and plaintiff does not allege any deficiency as to the certification of the permissible purpose.

Courts have held that section 1681b(f) of the FCRA does not impose liability on users of

a credit report even when they use or obtain a credit report in an impermissible manner.  See, *i.e.*,

Geiling v. Wirt Fin. Servs., Inc., 2015 WL 1529866, at *7 (E.D. Mich. Mar. 31, 2015).  The

district court in Geiling concluded as follows:

> In light of the permissible purpose requirement of subsection (f)(1) and the
> certification requirement of subsection (f)(2), §1681b(f) must only
> prohibit user-to-user transfers of consumer credit reports that, at the time
> they are initially issued, are not issued in compliance with subsections

(f)(1) and (f)(2).  Thus, there is no requirement in §1681b(f) that a user certify each time it uses or obtains a consumer credit report.  Similarly, there is no requirement that a user 'use or obtain' a consumer credit report for a permissible purpose.  What is required by §1681b(f) is that when a person uses or obtains a consumer credit report, that report was initially generated by a consumer reporting agency in compliance with subsections (f)(1) and (f)(2).

. . .

If a report is furnished in compliance with the Act, §1681b(f) has no concern for downstream transfers.  Any ills wrought by downstream transfers of a properly produced consumer report are controlled for by other sections of the Act.

Geiling, 2015 WL 1529866 at *21-22; see also Van Gorp, 2017 WL 8792709 at *1-2.  The Sixth

Circuit subsequently affirmed.  See Geiling v. Wirt Fin. Servs., Inc., 2017 WL 6945559 (6th Cir.

June 8, 2017).  The FCRA regulates consumer reporting agencies.  15 U.S.C. §1681(a) and (b).

Section 1681b(f) limits when a person may use or obtain a consumer report.  Although §1681b(f)

does not explicitly limit from whom a consumer report may be obtained, it must be read in

context with the overall statutory scheme.  In context, it is clear that §1681b(f) prohibits a person

from impermissibly using or obtaining a credit report from a consumer reporting agency.  The

statute simply does not create liability for merely using or obtaining properly furnished consumer

credit reports where that use or obtaining does not run afoul of one of the Act's other express

prohibitions or requirements.  Facts alleging that users merely obtained consumer reports, where

those reports were initially issued in compliance with §1681b(f), absent more, is not actionable

under the Act.

Moreover, in this case, the purpose in Kohn disclosing plaintiff's credit information was

to collect on plaintiff's delinquent credit card account.  Many courts, including the District Court

for the Eastern District of Wisconsin, have held that "obtaining a person's consumer report in the

course of attempting to collect the person's debt is considered a permissible purpose under the

FCRA." <u>Smith v. Encore Capital Grp. Inc.</u>, 966 F.Supp.2d 817, 823 (E.D. Wis. 2013).  Support for this holding is found in 15 U.S.C. §1681b(a)(3)(A), which makes it permissible to furnish a credit report to a person that "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer."  A permissible purpose also entails where a party otherwise has a "legitimate business need for the information."  15 U.S.C. §1681b(a)(3)(F).  In addition, the <u>Smith</u> court held that 15 U.S.C. §1681b(f) does not govern debt collections but, rather, consumer reporting agencies like, in that case, TransUnion.  <u>Smith</u>, 966 F.Supp.2d at 823.

Kohn is a law firm which used a credit report within the context of a legal proceeding. Kohn is not a consumer reporting agency and there is no allegation that a consumer reporting agency improperly disseminated plaintiff's consumer report to Kohn or to Discover.  Plaintiff has not alleged or articulated how Kohn would be liable under any other section of the FCRA. The FCRA simply did not prohibit Kohn from using plaintiff's consumer report that was properly obtained.

Even if plaintiff's claim that Kohn needed a permissible purpose when it included the credit score in the state court filing is correct -- which it is not -- one permissible purpose under the FCRA is the collection of a debt.  15 U.S.C. §1681b(a)(3)(A).  Kohn sought to collect a debt through a lawsuit.  Once the credit score was obtained by Discover in compliance with the FCRA ("in connection with a credit transaction involving the consumer…and involving the extension of credit to, or review or collection of an account of, the consumer" (15 U.S.C. §1681b(a)(3)(A)), there is no liability under the FCRA if the downstream transfer of the information is in furtherance of that permissible purpose.  And, Kohn further had a permissible

purpose when it used a credit score in support of filing the complaint to collect a debt.

Given this authority indicating that a debt collector may obtain and use a credit report to collect on a debt, no reasonable jury could find Kohn violated the FCRA by disclosing plaintiff's credit information in connection with its collection efforts.  For this additional reason, plaintiff's FCRA claim should be dismissed.  Accordingly, plaintiff cannot demonstrate that Kohn has violated the FCRA and those claims should be dismissed.

### III.   KOHN'S CONDUCT WAS NOT PROHIBITED UNDER THE FDCPA.

Plaintiff cannot reasonably maintain that the allegedly improper conduct by Kohn violated the FDCPA.  As an example, the sections of the FDCPA that plaintiff contends Kohn violated prohibit "harassment or abuse" (1692d) and "unfair or unconscionable means" (1692f).  Specifically, there is no explanation how disclosing a credit score that was obtained for a permissible purpose is harassment or abuse, and there is no explanation of how doing so could possibly be unfair or unconscionable.  Plaintiff simply cannot maintain a claim for abusive collection practices against Kohn on this record.  For this additional reason, plaintiff's FDCPA claims should be dismissed.

### IV.   PLAINTIFF'S CLAIMS ARE BARRED BY WISCONSIN'S PRIVILEGE DOCTRINE.

Plaintiff and the putative class seek to hold Kohn liable for filings made in the course of legal proceedings.  Any such claims are barred pursuant to Wisconsin's privilege doctrine.

Courts have held that statements made in judicial proceedings are absolutely privileged, giving "complete protection" to the declarant.  Ladd v. Uecker, 2010 WI App 28, ¶ 15, 323 Wis. 2d 798, 780 N.W.2d 216 (citing Lathan v. Journal Co., 30 Wis. 2d 146, 151, 140 N.W.2d 417 (1966); Vultaggio v. Yasko, 215 Wis. 2d 326, 331, 572 N.W.2d 450 (1998)).  There is a strong

presumption in favor of a full, true, and complete briefing of issues before courts.  See Bergman v. Hupy, 64 Wis. 2d 747, 750, 221 N.W.2d 898 (1974) ("Likewise, parties and counsel are immune from liability for 'relevant statements in pleadings and otherwise in the course of judicial proceedings.'"); see also Bromund v. Holt, 24 Wis. 2d 336, 342, 129 N.W.2d 149 (1964).  In the present case, the allegedly improper filings were clearly relevant and material to the underlying state court collection action.

Accordingly, pursuant to Wisconsin's privilege doctrine, plaintiff cannot maintain a claim against Kohn under the FDCPA or FCRA for the filings made in the underlying state court collection action.

## CONCLUSION

For the reasons set forth herein, the Court should dismiss plaintiff's claims against Kohn.

First, plaintiff has the burden of establishing Article III standing to pursue her FCRA and FDCPA claims against Kohn.  Specifically, to have standing, the Supreme Court requires a plaintiff to have suffered a concrete injury.  Spokeo, 136 S.Ct. 1540 (2016).  Plaintiff cannot offer any facts or evidence demonstrating that she has suffered an actual, concrete injury sufficient to confer standing to bring this action in her personal capacity or as a class representative.

Second, plaintiff cannot demonstrate that Kohn violated the FCRA because it does not prohibit Kohn's use of a properly obtained credit score and Kohn had a "permissible purpose" to both obtain and utilize the information in connection with the extension, review, or collection of an account.

Third, plaintiff cannot demonstrate that Kohn violated the FDCPA because she can point to no facts or evidence demonstrating that Kohn harassed or abused her, used false

23

representations or deceptive means to attempt to collect a debt or obtain information concerning a consumer, or used unfair or unconscionable means to attempt to collect a debt.

Lastly, plaintiff's claims are barred by Wisconsin's privilege doctrine.  For all of these reasons, the Court should grant Kohn's motion for summary judgment and dismiss the claims asserted against it in the pleadings on the merits, with prejudice, together with taxable costs and disbursements.

Dated at Milwaukee, Wisconsin, this 6th day of July, 2018.

VON BRIESEN & ROPER, S.C.
Attorneys for Defendant, Kohn Law Firm, S.C.


By: */s/ Electronically signed by Terry E. Johnson*
    Terry E. Johnson
    State Bar No. 1016704
    Kevin M. Fetherston
    State Bar No. 1084716

P.O. ADDRESS:
411 E. Wisconsin Avenue, Suite 1000
Milwaukee, WI  53202
414-221-6605
31152974_1.DOCX