UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WISCONSIN

---

Sasha Rizzo, on behalf of herself and all others similarly situated,

        Plaintiff,

vs.

Kohn Law Firm, S.C.,

        Defendant.

Case No.: 17-cv-408-jdp

---

**PLAINTIFF RIZZO'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT INCLUDING MOTION FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARD FOR CLASS REPRESENTATIVE**

---

**I.  SUMMARY**

This is a class action alleging that Kohn Law Firm, S.C. (hereinafter "Defendant") violated both 15 U.S.C. § 1681, *et seq.*, the Fair Credit Reporting Act (hereinafter the "FCRA") and 15 U.S.C. § 1692, *et seq.*, the Fair Debt Collection Practices Act (hereinafter the "FDCPA") by attaching documents evincing Plaintiff's and the class members' FICO credit scores to complaints filed in collection actions brought in state courts. Specifically, Plaintiff alleges that such conduct amounts to an impermissible use of her and the class members' FICO credit scores and constitutes an unfair and abusive means of attempting to collect a debt, in violation of the FCRA and FDCPA. Defendant disputes any and all wrongdoing.

After discovery into the underlying facts, successfully getting the action certified

1

as a class action, additional motion practice, and consistent arm's length settlement discussions and negotiations, including participating in a settlement conference before Magistrate Judge Peter A. Oppeneer, the parties reached a proposed settlement of this matter. *ECF No. 78*. The Court granted preliminary approval of the proposed settlement in an Order dated February 20, 2019. *ECF No. 81*. As such, this Court ordered that notice of the proposed settlement be served on class members. *Id.*

The parties have complied with this Court's Order regarding notice, and Plaintiff, therefore, now presents the matter for final approval. As evidenced by the contemporaneously filed declaration of Christopher Amundson of the claim's administrator, Analytics Consulting, LLC (hereafter "AC"), the direct notice program ordered by this Court has been very successful. Specifically, 809 of the class members, meaning 95%, successfully received the notice ordered by the Court. (*See* Declaration of Christopher Amundson of AC [hereafter "AC Decl."],¶¶ 13-15 .) Further, to date, no class members have elected to opt out of the settlement being presented to the Court for final approval. *Id.,* at 15. Moreover, as of the date of this filing, there have been no objections to the settlement. (*See* Declaration of Thomas J. Lyons, Jr. [hereafter "Lyons Decl."] ¶ 6).

In sum, the proposed settlement of this class action is a very good result for class members, and class members' reaction to it to date has been overwhelmingly favorable.

## II. BACKGROUND

### A. The History of this Case.

The Amended Complaint in this action was filed on May 30, 2017, (*ECF No. 1*)

2

alleging that Defendant had used Plaintiff's and the class members' FICO credit scores without a permissible purpose for doing so, and such amounted to unfair and abusive debt collection practices. *See generally, id.* On June 26, 2017, Defendant brought a Motion to Strike Plaintiff's Amended Complaint. *ECF No. 6*. The Court entered an Order on July 24, 2017, denying Defendant's Motion to Strike Plaintiff's Amended Complaint. *ECF No. 16*.

On July 27, 2017, Plaintiff and Discover Bank stipulated to the dismissal of Plaintiff's claims against it without prejudice. *ECF No. 19*. The Court entered an Order on July 27, 2017, approving the stipulation. *ECF No. 20*. On August 7, 2017, Defendant filed its Answer to the Amended Complaint (*ECF No. 25*) as well as a Motion to Stay Proceedings and Compel Arbitration. *ECF No. 21*. On November 8, 2017, the parties participated in a Settlement Conference before Magistrate Judge Peter A. Oppeneer, during which the parties did not reach a final settlement. On February 12, 2018, the Court entered an Order denying Defendant's Motion to Stay Proceedings and Compel Arbitration. *ECF No. 41*.

Thereafter, Plaintiff served upon Defendant interrogatories, requests for production of documents, and requests for admissions. Lyons Decl., ¶ 6. Defendant responded, producing 537 pages of documents. *Id.* Plaintiff was deposed on May 23, 2018. *Id.* On June 1, 2018, Plaintiff filed a Motion for Class Certification. *ECF No. 42*. On July 6, 2018, Defendant filed a Motion for Summary Judgment alleging, in relevant part, that Plaintiff lacked standing, that Defendant's conduct did not violate the FCRA or FDCPA, and that Plaintiff's claims were barred by the Wisconsin privilege doctrine. *See generally, ECF No. 57*. On July 18, 2018, the Court entered an Order granting Plaintiff's Motion for Class

Certification and denying without prejudice Defendant's Motion for Summary Judgment. *ECF No. 62*. Thereafter, the parties entered into the proposed settlement now being considered by the Court.

### B. The Terms of the Settlement.

Defendant will pay $270,000 in total. (*See,* Settlement Agreement, *ECF No. 78*, Ex. A, at III(E)(2) (hereinafter the "Settlement Agreement")). Of that, $166,889.76 has been designated to be paid to the class members, with $195.88 to be paid to each class member. *Id.,* at III(E)(2)(d). All class members will be mailed a check for $195.88. *Id.,* at III(F) and Lyons Decl., ¶ 15. Finally, any money that remains after this distribution process is proposed to go to Legal Action of Wisconsin, which is actively involved in protecting consumer rights, rather than revert to Defendant. *Id.*

### III. LEGAL ANALYSIS

### A. The Settlement Should Be Finally Approved.

With regard to the law, it is uncontroversial that "Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). It is "generally for the parties to decide how much litigation risk they wish to take, and courts should be hesitant to second-guess them." *Martin v. Reid*, 818 F.3d 302 (7th Cir. 2016). "[F]ederal courts look with great favor upon the voluntary resolution of litigation through settlement. This rule has particular force regarding class action lawsuits." *Martin v. Caterpillar, Inc.*, No. 07-cv- 1009, 2010 U.S. Dist. LEXIS 82350, at *5-6 (C.D. Ill. Aug. 12, 2010) (quoting *Air Line Stewards and Stewardesses Ass'n, Local 550 v. Tans World Airlines, Inc.*, 630 F.2d 1164, 1166- 1167 (7th Cir. 1980)). In

4

determining whether to grant final approval over a class action settlement, the proper frame of analysis is whether the settlement is "lawful, fair, reasonable, and adequate." *Id.*; *see also Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980), *overruled on other grounds by Felzen v. Cal. Pub. Employees' Ret. Sys.*, 134 F.3d 873 (7th Cir. 1998). While judges must assess the settlement agreement in its entirety with respect to these factors; *see, e.g., id.* at 315 (citations omitted); *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996) (citations omitted); the analysis is "limited" in one respect: "[j]udges should not substitute their judgment as to optimal settlement terms for the judgment of the litigants and their counsel" and need not undertake the full investigation of the claims that would be necessary if the case were being tried before them. *Armstrong*, 616 F.2d at 314-15. Instead, the Court's "inquiry is limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate". adequate." *Isby*, 75 F.3d at 1196.

In making this determination, the court considers various factors, including "the strength of plaintiff's case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Id.,* at 1199; *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997); *see also Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745, 748 (7th Cir. 2006) (listing "the probability of plaintiff prevailing on its various claims, the expected costs of future litigation, and hints of collusion" as factors

5

for consideration).

### 1. The Strengths of Plaintiff's Case Compared Against the Terms of the Settlement.

"Generally, the first factor, the strength of Plaintiffs' case measured against the terms of the settlement, is the most important factor." *Martin v. Caterpillar, Inc.*, 2010 U.S. Dist. LEXIS 82350, at *5; *see also Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) ("The 'most important factor relevant to the fairness of a class action settlement' is the first one listed: 'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'"). To evaluate this factor, "[i]n essence, a court must weigh the value of the proposed settlement against the total amount that the class could recover, discounted by the weaknesses and risks inherent in the class' claims." *Schulte v. Fifth Third Bank,* 805 F.Supp.2d 565, 578 (N.D. Ill. 2011).

Under the FCRA, if a defendant willfully violates the statute, the plaintiff may recover actual damages and up to $1,000.00 of statutory damages. 15 U.S.C. § 1681n. Alternatively, if a defendant negligently violates the statute, the plaintiff may recover actual damages. 15 U.S.C. § 1681o. Under the FDCPA, in the context of class actions, class members' damages are limited to the "lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. § 1692k. Pursuant to the proposed Settlement Agreement, each class member stands to recover $195.88. Lyons Decl. ¶ 7. This is an extraordinary result for the class members. First, each class member stands to recover almost 20% of the maximum allowable statutory damages under the FCRA. *See,* 15 U.S.C. § 1681n. Given that Defendant has demonstrated that its net worth in 2017 was

only $470,000.00 (ECF No. 78, Ex. E), the statutory damages for the entire class would be capped at $4,700.00—approximately $5.52 per class member. *See,* 15 U.S.C. § 1692k.

Courts have determined that "[a] settlement can be satisfying even if it amounts to a hundredth or even - a thousandth of a single percent of the potential recovery." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), aff'd 899 F.2d 21 (11th Cir. 1990); *City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380, 1386 (S.D.N.Y. 1972) (a recovery of 3.2 % to 3.7 % of the amount sought is "well within the ball park"), aff'd in part, rev'd on other grounds, 495 F.2d 448 (2d Cir. 1974); *Martel v. Valderamma*, 2015 U.S. Dist. LEXIS 49830 * 17 (C.D. Cal. 2015) (approving a settlement of $75,000 when potential damages were $1.2 million, or about 6%); *In re Toys R US FACTA Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014) (approving settlement with *vouchers* (not cash) potentially worth a maximum of three percent (3%) *if all possible claims were actually made*.

Courts in the Seventh Circuit have held similarly. Specifically, in *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 583-84 (N.D. Ill. 2011), in a scholarly opinion surveying cases on this issue, the court explained as follows in approving the proposed settlement:

> [T]he $9.5 million settlement fund still represents approximately 10% of the $96.5 million that is the class's maximum potential recovery. Numerous courts have approved settlements with recoveries around (or below) this percentage. *See, e.g., Lazy Oil Co. v. Witco*, 95 F. Supp. 2d 290, 339 (W.D. Pa. 1997) (approving settlement amounting to 5.35% of damages for the entire class period, and 25.5% of damages within the limitations period); *Erie Forge and Steel, Inc. v. Cyprus Minerals Co.*, Civil No. 94-404 (W.D. Pa. Dec. 23, 1996) (approving settlement of $3.6 million where plaintiffs' expert estimated damages at $33 million); *In re*

*Domestic Air Tranp. Antitrust Litig.*, 148 F.R.D. 297, 325 (N.D. Ga. 1993) (12.7% to 15.3%); *In re Newbridge Networks Sec. Litig.*, 1998 U.S. Dist. LEXIS 23238, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [] an agreement that secures roughly six to twelve percent of a potential trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 6680, 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.")" (internal citations omitted).

Another informative opinion from the Seventh Circuit is *In Re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1008 (E.D. Wis. 2010), where, in approving the settlement, the court noted as follows:

> Adding the $65 million in cash and the $45.7 million in warranties, the value of the settlement can be estimated as $110.7 million. As noted, class counsel believes that if the class prevailed at trial it could recover damages in the range of $816 million to $2.5 billion. Under class counsel's view of the case, then, the settlement is reasonable so long as the class's likelihood of success on the merits is no better than 4.4% to 13.6%.

Moreover, Plaintiff and the class members faced significant risks in this case which could have forestalled the recovery or prevented a recovery from being realized at all. If this settlement were not to be approved, Defendant's motion for summary judgment would return to the Court's calendar, with an uncertain outcome. Whichever party lost that motion would likely appeal, leading to further expense and delay, as well as a real risk of loss for Plaintiff and the class members. Finally, Plaintiff and the class members would face a risk of loss at trial. Counsel for Defendant has argued, and would continue to argue, that authority persuasively suggests that its conduct is wholly

permissible under both the FCRA and FDCPA. *See, Van Gorp v. Commerce Bank* No. 4-17-cv-189-CRW-CFB (S.D. Iowa 2017) (defendant published the plaintiff's FICO credit score in a court filing; defendant prevailed on a motion for summary judgment); *Schmitz v. Wetsch Abbott Osborn Van Vliet PLC,* No. 4-18-cv-00015-RP-CFB (S.D. Iowa 2018); *Geiling v. Wirt Fin. Serv., Inc.,* 2015 WL 1529866, at *7 (E.D. Mich. Mar. 31, 2015) (section 1681b(f) of the FCRA does not impose liability on subsequent users of consumer reports). In sum, including based on comparison of percentages for which other class actions are settled, the settlement proposed in this matter is a very favorable one for the class members.

### 2. The Expense, Complexity, and Likely Duration of Further Litigation Favors the Proposed Settlement.

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent v. Midland Funding, LLC*, No. 3:11- CV-1332, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011) (quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). Thus, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id*. (quoting Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.50 (4th ed. 2002)).

For this reason, courts have consistently found that "[t]he expense and possible duration of the litigation [should] be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). *See also Lazy Oil Co. v. Witco Corp.*,

95 F. Supp. 2d 290, 340 (W.D. Pa. 1997) ("[I]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.") (citations omitted).

Continued litigation would be complex, lengthy, and expensive. With regard to expected duration, as noted, an otherwise strong case could continue for a substantial amount of time if the proposed settlement were not approved and be extremely expensive to both sides. If the settlement is not approved, Defendant will likely bring a renewed motion for summary judgment. Though Defendant's previous motion for summary judgment failed, it was denied without prejudice after the Court deemed it premature. *See, ECF No. 62 at 1-2*. After an expensive trial, regardless of which party prevailed, there likely would be appellate practice, further delaying the receipt of actual funds by the class members. *See, Great Neck Capital Appreciation Inv. Partnership, L.P. v. PricewaterhouseCoopers, L.L.P.,* 212 F.R.D. 400, 410 (E.D. Wis. 2002) ("Given the prospects for a long and arduous trail and appeal process, settlement at this stage is beneficial to class members"). The practical value of settlement now versus continued litigation weighs in favor of granting final approval of the settlement.

### 3. The Class' Highly Favorable Reaction to the Settlement Favors Approval.

As noted above, not a single class member has requested exclusion from the settlement. (AC Decl. ¶ 15). Further, to date, literally not a single objection to any aspect of the proposed settlement has been filed. (Lyons Decl. ¶ 6). *See, ACLU of Ill. v. United States GSA*, 235 F. Supp. 2d 816, 819 (N.D. Ill. 2002) ("In light of the fact that no objectors came forward to challenge the settlement, and because we believe that the settlement is otherwise fair and reasonable, we hold that these factors present no bar to

approval of the settlement."). Accordingly, with no class members having opted out, and no objections to date, the class members' reaction to the proposed settlement has been overwhelmingly favorable and favors approval.

### 4. The Views of Experienced Counsel Further Support Approval.

Also weighing in favor of granting approval of the settlement is the fact that counsel recommends approval of the settlement agreement. (Lyons Decl. ¶ 5). The Court may give weight to the opinion of experienced counsel in determining whether to approve a settlement. *Synfuel,* 463 F.3d at 653.

### 5. The Proposed Settlement is the Product of Arm's-Length Negotiations.

There was no collusion, and there is no hint of evidence of collusion, in negotiating the settlement. The settlement was reached through arm's length negotiations by experienced counsel. (*ECF No. 78*) and with the assistance and oversight of Magistrate Judge Oppeneer. The decisions indicate that the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." *Schulte v. Fifth Third Bank*, No. 09-cv-6655, 2010 U.S. Dist. LEXIS 144810, at *15-16 n.5 (N.D. Ill. Sep. 10, 2010) (quoting William B. Rubenstein, Alba Conte and Herbert B. Newberg, Newberg on Class Actions § 11:51 (4th ed. 2002) (collecting cases)). There no evidence of collusion. As such, this factor weighs in favor of approval.

### 6. The Stage of the Proceedings Supports Approval.

"The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of

plaintiffs' claims." *Armstrong*, 616 F.2d at 325; *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021–22 (N.D. Ill. 2000) (before settlement took place, Plaintiff was able to weigh the case's strengths and weaknesses and "had ample opportunity to reach an informed judgment concerning the merits of the proposed settlements"). Here, substantial written discovery was performed, including production of hundreds of pages of documents produced and Plaintiff's deposition was taken. Plaintiff therefore has had ample opportunity to examine Defendant's arguments, craft her own, and weigh the strengths and weaknesses of her case, ultimately reaching an informed judgment concerning a class wide settlement.

### B.  The Requested Fee Award and Litigation Costs Should Be Approved.

The proposed settlement confers substantial relief upon the class. However, it came at great risk and cost in terms of both time and money. Under such circumstances, counsel is entitled to a reasonable award of attorneys' fees and costs from the fund as a whole. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). A reasonable fee is defined by the market—in particular, the agreement that would have resulted from an *ex ante* negotiation of counsel's legal services between class counsel and an informed class. *Synthroid I,* 264 F.3d at 719.

In assessing the appropriateness of a requested fee, the Court should consider amounts awarded in other cases as well as "the amount of work involved, the risks of non-payment, and the quality of representation." *Taubenfeld,* 415 F.3d at 599. Additionally, the Court should bear in mind the risk faced by the attorneys of recovering nothing while also protecting the interests of the absent class members.  *Florin v.*

*Nationsbank, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994) ("The district court must balance the competing goals of fairly compensating attorneys for their services rendered on behalf of the class and of protecting the interests of the class members in the fund.").

### 1. The Actual Fee Contract Here Supports the Request.

While not dispositive, "[w]hen a court determines the size of an attorney's fee award, it is appropriate for it to consider any agreement between class counsel and class representatives about fees and expenses." 5 J. Moore, *et al., Moore's Fed. Practice— Civil § 23.124* (2010). In prior cases, this Court has properly given some weight to such fee agreements. *See, Berndt,* 2013 WL 6331344, at *1; *Fosbinder-Bittorf,* 2013 WL 5745102, at *1. Here, class counsel, recognizing the significant risk of non-payment, was able to insist on the right to receive up to 45% of the common fund plus costs. (Lyons Decl. ¶¶ 7-8). Thus, the fact that counsel is seeking attorneys' fees of less than that set forth in the fee agreement weighs in favor of approval.

### 2. Awards in Other Cases Support the Request.

Moreover, a review of amounts awarded in other cases, it is apparent that the amount of attorneys' fees sought, equal to approximately 33% of the value of the settlement, has consistently been deemed fair and reasonable. *See, e.g., Gaskill v. Gordon,,*160 F.3d 361, at 362 (7th Cir. 1998) ("most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis…[t]he typical contingent fee is between 33 and 40 percent"); *Sjoblum v. Charter Communs*, No. 07-cv- 451, dkt. #394 (W.D. Wis. Jan. 26, 2009, Crabb, J.); *Freeman v. Total Sec. Management-Wisconsin, LLC,* No. 12-cv-461-wmc, 2014 WL 4829480, at *2 (W.D. Wis. Sept. 29,

2014) ("the court finds an award of 50% of the total settlement award, plus costs, to be a reasonable fee award."); *Pintor v. Hypro, Inc.,* No. 17-cv.890-pp, 2018 WL 4705847, at *1 (E.D. Wis. Oct. 1, 2018) ("The court finds that the plaintiff's request of attorneys' fees in the amount of 33.33% of the settlement fund… is reasonable."); *Goodell v. Charter Communications, LLC,* No. 08-cv-512-bbc, 2010 WL 3259349, at *1 (W.D. Wis. Aug. 17, 2010); *Berndt v. Cleary Bldg. Corp.,* No. 11-cv-791-wmc, 2013 WL 6331344, at *1 (W.D. Wis. Dec. 5, 2013) (awarding 30% of common fund, citing the risk counsel took on, awards in similar cases, and the amount of work involved to resolve the case); *Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc.,* No. 11-cv-592-wmc, 2013 WL 5745102, at *1 (W.D. Wis. Oct. 23, 2013) (awarding 33.3% of common fund, citing similar considerations). Substantial authority demonstrates that the amount of attorneys' fees sought is reasonable, especially considering the amount of work involved to secure the settlement, the caliber of the settlement, as well as the risk counsel undertook litigating this case with the potential of no recovery.

The available data shows that when district courts in this Circuit apply the *ex ante* test, the fee that class counsel most often receives is one-third of the fund plus costs. *See, e.g., Kelly v. Bluegreen Corp.,* No. 08-401-bcc. ECF 151 at 4 (W.D. Wis. Oct. 30, 2009) (awarding one-third of common fund); *Beesley v. Int'l Paper Co.,* 06-cv-703, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) (same); *Will v. Gen. Dynamics Corp.,* No. 06-698, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) (same); *Martin v. Caterpillar, Inc.,* No. 07-cv-1009, ECF No. 197 (C.D. Ill. Sept. 10, 2010) (same); *Perry v. Nat'l City Bank,* No. 05-CV-891, ECF No. 81 at 2 (S.D. Ill. Mar. 3, 2008) (same); *Retsky Family Limited*

14

*Partership v. Price Waterhouse, LLP,* No. 97-C-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) ("A customary contingency fee would range from 33% to 40% of the amount recovered… Thus, the requested one-third of the common fund constitutes a reasonable attorney's fee").

As to attorneys' fees, class counsel seeks a total of 32% of the $270,000 settlement or $87,520.99. As the Court can see by Plaintiff's counsels' submission and crosscheck of the lodestar amount, the total amount of time invested was valued at $211,207.95. Plaintiff is not seeking the total value of the attorney's fees which were expended in furtherance of the litigation (Lyons Decl. ¶ 8; Christianson Decl. ¶ 8) but instead only $87,520.99 of the settlement.

With regard to costs, as detailed in accompanying Declaration of Thomas J. Lyons Jr., for Class Counsel's litigation costs, Class Counsel seeks a total in the amount of $11,589.25 for costs as detailed in Lyons Decl. ¶ 10.

### 3. The High Quality of Class Counsel's Services Supports the Request.

It was clear from the outset that anyone representing the class here would be required to overcome a well-financed adversary and prominent defense counsel with abundant financial and legal resources at their disposal. This case was defended by a highly experienced and skilled defense firm, Von Brisen & Roper, S.C., which aggressively challenged every aspect of Plaintiff's case. Despite such formidable, well-financed adversaries, counsel was able to secure a $270,000.00 class wide settlement. Given the daunting obstacles that remained before the class could secure any recovery, including, but not limited to, compelling adverse authority and the almost certainty that

15

Defendant would have revived its motion for summary judgment, let alone one of this magnitude, the outcome here further reflects a high quality of work required, further supporting the requested fee.

*Ex ante,* it was foreseeable that this case would require a large commitment of time and resources to prosecute. Since the inception of this lawsuit, class counsel has expended a combined total of 473.30 professional hours on this matter. (Lyons Decl. ¶ 8; Ex. B and Declaration of Joshua Christianson ("Christianson Decl."), ¶ 8, Ex. B). That is a very substantial amount of time and effort, which further supports the requested award. *See, Synthroid I,* 264 F.3d at 721. The amount of work expended was commensurate with the difficult and novel factual and legal issues raised, the discovery required and efforts required to obtain that discovery, motion practice, the size of the class, the level of resistance from Defendant, the burden of proof that Plaintiff bore, and the risk that inadequate preparation at any stage could have led to no recovery for Plaintiff and, correspondingly, no attorney's fees. Thus, the quality of representation supports the requested fee.

### C. The Proposed *Cy Pres* Recipient Should Be Approved.

In the motion for preliminary approval of class action settlement, and in the settlement agreement, counsel for Plaintiff stated that they would apply for Legal Action of Wisconsin, a non-profit organization that represents the interests of consumers, to be the recipient of the *cy pres* funds in this case. (Settlement Agreement at III(F).) Legal Action of Wisconsin, through its Consumer Law Priority Committee, consistently advocates for consumer rights, working to ensure that low-income consumers receive the

rights and protections afforded to them by state and federal consumer protections statutes and regulations. *See,* Legal Action of Wisconsin Services, https://www.legalaction.org/services (last accessed May 16, 2019).

### D. The Class Representative's Service Award Should Be Approved

Finally, Plaintiff respectfully requests that the Court approve the payment of an incentive award to Plaintiff in the amount of $4,000.00. Incentive awards are appropriate to induce an individual to become a named plaintiff in a lawsuit. *Synthroid Mktg.,* 264 F.3d at 722. In deciding whether an incentive award is appropriate and what the amount should be, courts may consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursing the litigation." *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998).

The class representative, Ms. Rizzo, was very proactive, enthusiastic and helpful for the case of the absent class members. She responded to discovery, prepared for and had her deposition taken, and actively communicated with counsel to stay abreast of the status of and any developments within the course of the litigation. (Lyons Decl. ¶¶ 12-14).

The proposed class representative's service award of only $4,000.00 is well within the range of reasonableness and should be approved. *Westcott v. FedEx Ground Package Sys. (In re FedEx Ground Package Sys.),* No. 3:05-MD-527 RLM (MDL 1700), 2017 U.S. Dist. LEXIS 64936, at *24 (N.D. Ind. Apr. 28, 2017) ("The request for $15,000 service awards for the class representative is just, fair and reasonable."); *Am.*

*Int'l Grp., Inc. v. Ace Ina Holdings, Inc.*, No. 07 CV 2898, 2012 U.S. Dist. LEXIS 25265, at *59 (N.D. Ill. Feb. 28, 2012) (holding, as to seven class representatives, that "the $25,000 figure is a reasonable one."). The Plaintiff's incentive payment requested here is deserved, in line with other awards of this kind, is reasonable, and, therefore, should be approved.

## **CONCLUSION**

For the reasons stated and such other reasons as may appear to the Court, Plaintiff respectfully request that the Court grant this instant motion in all respects and enter a corresponding final approval order which approves the settlement fund of $270,000 to be disbursed in the following manner: $8,314.00 to the settlement administrator, attorneys' fees and costs $90,796.24, service award to the Plaintiff of $4,000.00 and a net settlement fund of $166,889.76 to be disbursed to the 852 member class with any unclaimed funds being designated as a *cy pres* award to Legal Action of Wisconsin.

Dated this 20th day of May, 2019.

Respectfully submitted,

By: /s/ Thomas J. Lyons, Jr.

Thomas J. Lyons, Jr., Esq.
MN.  Attorney I.D. #: 02496466
**CONSUMER JUSTICE CENTER, P.A.**
367 Commerce Court
Vadnais Heights, MN 55127

Telephone: (651) 770-9707
Facsimile: (651) 704-0907
tommy@consumerjusticecenter.com

Thomas J. Lyons, Esq.
WI Attorney I.D. #: 1019127
**LYONS LAW FIRM, P.A.**
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707
Facsimile: (651) 770-5830
tlyons@lyonslawfirm.com

Joshua D. Christianson, Esq.
WI Attorney I.D. #: 1060033
**CHRISTIANSON & FREUND, LLC**
920 So. Farwell St., Ste. 1800
P.O. Box 222
Eau Claire, WI 54702-0222
Telephone: (751) 832-1800
Facsimile: (888) 979-8101
lawfirm@cf.legal

*Counsel for Plaintiff and the Class*